## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

RICHARD LEE BOWDEN,

          Plaintiff,

v.                                CIVIL ACTION NO.  5:09-cv-00914

FRITO-LAY, INC.,

          Defendant.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed Defendant's Motion for Summary Judgment [Docket 26].  The Court has also reviewed Plaintiff's Response [Docket 35] and Defendant's Reply [Docket 37].   After careful consideration, the Court grants Defendant's motion.

### I. INTRODUCTION AND BACKGROUND

Plaintiff Richard Lee Bowden was an employee of Frito-Lay, Inc., on July 11, 2007.  At that moment in time, he worked as an "extra" sales route representative for Defendant, wherein he substituted for other route sales representatives who were ill or on vacation.  On July 9, 10, & 11 of 2007,  Plaintiff was substituting for Mr. Jerry Dwayne Wolfe, and was driving Wolfe's truck to make deliveries on Wolfe's route.  On July 9, 2007, Plaintiff states that he complained about the dangerous condition of the tires on the truck—specifically, that they were balding and lacking sufficient tread—when he made a telephone call to a service representative of Defendant at the latter's Atlantic Fleet Service Center in order to get permission to purchase new tires (Docket 26, Ex. 1 at 3) or to indicate that the tires were "bad" and needed to be replaced (Docket 35, Ex. 1 at 3

& 7).  Two months earlier, the truck had been inspected and approved pursuant to the requirements of state law.

On July 11th, Plaintiff was driving the truck on Interstate 64 near White Sulphur Springs, West Virginia when it hydroplaned, lost control, and collided with a guardrail.  Plaintiff alleges that this collision and his resulting injuries—two herniated discs in his lower back—occurred as a result of Defendant's deliberately formed intention to injure him by exposing him to the dangerous and known conditions of the truck.  Specifically, he states that the tires were worn to such a degree that they were a specific unsafe working condition that presented a high probability of serious injury or death.

On June 30, 2009, Plaintiff filed this civil action against Defendant in the Circuit Court of Greenbrier County, West Virginia, alleging a violation of West Virginia Code Section 23-4-2(d)(2)(ii).  Pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), Defendant timely removed Plaintiff's civil action to this Court on August 11, 2009.  This motion for summary judgment was filed on March 2, 2010.  On March 16, 2010, the scheduling order in this case was amended to allow for additional discovery.  However, no additional summary judgment motions or other submissions in support thereof were filed by either party.

## II. ARGUMENT

Defendant argues that summary judgment against Plaintiff is appropriate in this case on several different grounds.

### A. Applicable Safety Statutes, Rules, Regulations or Standards

First, Defendant argues that Plaintiff has not shown a genuine issue of material fact with regard to whether the tires on his truck violated a state or federal statute, rule, or regulation that was

specifically applicable to the work or working condition involved in this case.  Specifically, Defendant argues that Plaintiff has only cited general safety statutes and not the requisite specific statutes.

To wit, Plaintiff cited West Virginia Code Section 21-3-1 in his Complaint, which provides that

> Every employer shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees: Provided, that as used in this section, the terms "safe" or "safety" as applied to any employment, place of employment, place of public assembly or public building, shall include, without being restricted hereby, conditions and methods of sanitation and hygiene reasonably necessary for the protection of the life, health, safety, or welfare of employees or the public.

In his Complaint, Plaintiff argues that this provision "[places] the responsibility on the defendant to replace the tires in order to make them safe[.]" Docket 1, Ex. 2 at 3.  Defendant argues that this provision is a general workplace safety statute that is not sufficient under applicable West Virginia law.

In discovery, Plaintiff has also cited to 49 C.F.R. Section 396.7, which provides "(a) General-- A motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle."  Defendant argues that this provision is too general—it "actually uses the word 'general' in its subheading" (Docket 27 at 8)—to provide for liability.

Moreover, Plaintiff disclosed in Discovery that he may rely upon West Virginia Code Section 17C-15-1(a).  That statute provides that

> [i]t is a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person, or which

3

> does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this article, or which is equipped in any manner in violation of this article, or for any person to do any act forbidden or fail to perform any act required under this article.

Defendant argues that this only requires generally safe equipment and is not sufficient to survive summary judgment.

Finally, Plaintiff has also suggested the West Virginia Motor Vehicle Inspection Manual ("Manual"), which provides instructions for how an inspection of a vehicle is to be performed. Defendant suggests that Plaintiff's reliance upon the Manual is based on a theory that because the truck's tires would not have passed inspection on the day of the accident, Defendant was in violation of the law. Defendant disputes this theory, as West Virginia law only requires annual inspection and there is no allegation that the truck did not have a valid inspection sticker. Defendant states that the Manual imposes no duty on vehicle owners at all, let alone a duty that they measure tire tread on a daily basis. Rather, Defendant states that the Manual only contains guidelines for vehicle inspection stations.

Finally, Defendant points the Court to the existence of federal regulations that do require certain tire tread depths for larger vehicles with higher weights. *See, e.g.,* 49 C.F.R. Sections 393.75,[1] 393.1 ("establish[ing] minimum standards for commercial motor vehicles") and 390.5

---

[1] 49 C.F.R. Section 393.75 provides in relevant part that

(b) Any tire on the front wheels of a bus, truck, or truck tractor shall have a tread groove pattern depth of at least 4/32 of an inch when measured at any point on a major tread groove. The measurements shall not be made where tie bars, humps, or fillets are located.

(c) Except as provided in paragraph (b) of this section, tires shall have a tread groove pattern depth of at least 2/32 of an inch when measured in a major tread groove. The measurement shall not be made where tie bars, humps or fillets are located.

(defining "commercial motor vehicle" in relevant part, as "gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater.").   According to Defendant, these provisions, which apparently are inapplicable to the instant case due to the weight of the truck,  "show the conscious decision of the legislative branch not to require daily measurement of tread depth on smaller vehicles."  (Docket 27 at 10).  Defendant concludes that "[i]f the drafters of the "tires" regulation intended for it to apply to lighter vehicles like the one Plaintiff was driving, they would have so stated. They did not. No statute, rule, or regulation exists that would fulfill element (C) under the deliberate intent statute."  *Id.* at 11.

Plaintiff contests some[2] of these arguments in his response.  First, pointing out that state regulations such as the Manual have the force of law, he argues that the Manual imposes a duty upon vehicle owners to have tires that meet certain specific minimum requirements due to safety concerns regarding worn and insufficient tread,[3] and that this duty is imposed via the vehicle inspection process required by state law.  According to Defendant, it is, therefore, illegal to have tires with insufficient tread, with the penalty of a vehicle being removed from the road if it does not comply. While conceding that the truck in the instant case did not fall under federal regulation, Plaintiff emphasizes that the Manual applies to his truck and constitutes a specific state regulation. Moreover, Plaintiff argues that the Manual does apply to his work or working condition.  Given the nature of his job, he argues that the "legality, and therefore safety, of the tires on [his] box-truck are

---

[2] Plaintiff does not address Defendant's other arguments regarding the other statutes and regulations relied upon by Plaintiff.

[3]  See Docket 37, Ex. 2, at 79-82.

an essential part of [his] job and go to the very heart of whether he can perform his job in a safe manner." (Docket 35 at 3). He points to deposition testimony from co-workers who had to refuse to work in order to get safe tires placed on their trucks.

Defendant differs in its reply. It argues that the Manual is inappropriate for Plaintiff to rely upon because it does not apply to drivers, owners, or employers, who are not charged with any duty under the manual. According to Defendant, the Manual neither imposes a specific duty upon it nor is applicable to the specific type of work at issue in this case due to the fact that it only regulates inspection stations, and not vehicles' drivers or owners, or employers.[4] "An employer reading the inspection manual would not be put on notice that the manual places a duty on them. Any reasonable person interpreting the manual would believe that it is directed toward inspection station owners, not vehicle owners." (Docket 37 at 5).

*B. Risk and Probability of Serious Bodily Injury or Death, and Defendant's Knowledge Thereof*

Defendant argues that Plaintiff has not demonstrated a genuine issue of material fact that worn tires present a high degree of risk and the strong probability of serious injury or death. According to Defendant, while such tires present some degree of risk and a possibility of some injury, this does not meet the requirements of the statute. It argues that the sub-elements of the statute—high degree of risk, strong probability of injury or death, and the seriousness of the latter—could not lead a rational trier of fact to find for Plaintiff on this element.

---

[4] Defendant cites several portions of the manual as evidence of its sole applicability to inspection stations. "TO ALL INSPECTION STATION OWNERS AND/OR OPERATORS" (Docket 37, Ex. 2, at 16); "TO INSPECTION STATION OPERATOR: . . . " *Id.* at 25; and "It is important that every official inspection station properly instruct all employees in accordance with the instructions and procedures as set forth herein." *Id.* at 33.

6

Defendant also argues that Plaintiff cannot show a genuine issue of material fact that it had actual knowledge as to high degree of risk and the strong probability of serious injury or death presented by the tires.  While Defendant concedes that Plaintiff may have reported that the tires were worn, it argues that Plaintiff did not do so in a manner to put it sufficiently on notice.

Plaintiff disagrees with the assertions of Defendant.  First, he argues that the high degree of risk and the strong probability of serious injury or death presented by the tires was adequately demonstrated when the truck hydroplaned, lost control, struck the guardrail, and injured his back.  According to Plaintiff, his two herniated discs that required surgery constitute a serious injury, and the accident itself could have produced death, paralysis, or other serious injuries.  He further argues that the danger involved in driving on wet roads with smooth or illegal tires is common knowledge to the general public and Defendant in particular.  Plaintiff also cites to the report of his expert witness, Mr. Joseph L. Grant, which indicates that worn tires contribute to hydroplaning.  Since Plaintiff testified at deposition that he called to report the tires two days prior to the accident (this is apparently in dispute), he argues that he is entitled to the inference that he personally put Defendant on notice as to the unsafe tire conditions.

Further, Plaintiff argues that while the truck had a valid inspection sticker, the truck's tires at the time of the accident were not legal.  According to Plaintiff, it is not known whether these tires were on the truck at the time of the inspection.  He also argues that it is common knowledge that inspection stations will improperly issue inspection stickers.  Plaintiff concludes that "regardless of the presence of the inspection sticker or whether it was issued properly, the fact remains that the tires that were on the rear of the truck on the day that [he] collided with the guardrail were very well worn and did not have sufficient tread to prevent [his] wreck."  (Docket 35 at 5-6).  Defendant does not

7

discuss these arguments in reply other than to state that "no evidence has been adduced showing that anyone at Frito-Lay had actual knowledge of a high degree of risk and a strong probability of serious injury or death." (Docket 37 at 1).

### III. STANDARD OF REVIEW AND APPLICABLE LAW

*A. Summary Judgment*

When federal court jurisdiction is based on diversity, the court must apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The standard for summary judgment is procedural. Therefore, the federal standard applies. *Gen. Accident Fire & Life Assurance Co. v. Akzona, Inc.*, 622 F.2d 90, 93 n.5 (4th Cir.1980). To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). However, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

*B. West Virginia Code Section 23-4-2(d)(2)(ii)*

8

Employees in West Virginia injured on the job are only entitled to file suit against their employers in certain circumstances; generally, employees are required to seek redress from the workers' compensation program.  West Virginia Code Section 23-4-2(d)(2)(ii) provides that

> [t]he immunity from suit . . . may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention".  This requirement may be satisfied only if
> . . . .
> The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:
>
> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
>
> © That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through ©, inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and
>
> (E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

All five of these elements must be met in order for a plaintiff to survive summary judgment.  West Virginia Code Section 23-4-2(d)(2)(iii)(B).

9

"A plaintiff may establish 'deliberate intention' in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided" for in the statute. Syllabus Point 2, *Ryan v. Clonch Industries, Inc.*, 219 W. Va. 664 (2006) (internal citations omitted). "The violation of a statute, rule, regulation or standard is a proper foundation for the element of deliberate intent . . . where such statute, rule, regulation or standard imposes a specifically identifiable duty upon an employer, as opposed to merely expressing a generalized goal, and where the statute, rule, regulation or standard asserted by the employee is capable of application to the specific type of work at issue." *Id.* at Syllabus Point 3. For example, "a regulation directed specifically to coal mining could not be used as a basis for establishing a violation by an employer operating exclusively in the lumber industry, while a regulation falling under a more general classification, such as labor, might be applicable to several different industries." *Id.* at 672.

Summary judgment has been granted in cases where the plaintiff was unable to demonstrate the existence of statutes, regulations, or standards specific to the work and working condition at issue in the case. "To put the employer on notice, and to evidence its egregious conduct, the statute or standard must *specifically* address the unsafe working condition in question. It is not enough to prove that a part on a piece of machinery was defective and that a statute or regulation required all parts to be in good working order. Such a statute says very little to the employer." *Greene v. Carolina Freight Carriers*, 663 F. Supp. 112, 115 (S.D. W. Va 1987) (Haden, J.) (emphasis in original). In *Greene*, the plaintiff had been injured due to a fall off of his truck. Judge Haden granted summary judgment after finding that the federal regulation[5] relied upon by the plaintiff was

---

[5]  49 C.F.R. § 396.3(a)(1) (1985) provided that "[p]arts and accessories shall be in safe and proper operation condition at all times. These include those specified in Part 393 of this subchapter and any

(continued...)

insufficiently specific.  Judge Haden  noted that "[i]t [did] not contain any standards or requirements applicable to steps in particular or entrances to tractors in general.  It [was] quite abstract in its command.  Indeed, the regulatory language quoted by the Plaintiff falls under a paragraph entitled 'General.'" *Id.*

However, the Supreme Court of West Virginia has also reversed summary judgment in other instances on this issue.  In *Ryan*, the plaintiff was employed at a lumber yard and assigned to place metal bands around lumber pallets.  He was blinded in his left eye when it was struck with a sharp piece of the metal banding material.  The plaintiff alleged that his employer violated federal regulations[6] requiring that an employer conduct a workplace hazard assessment to determine

---

[5](...continued)

additional parts and accessories which may affect safety of operation, including but not limited to, frame and frame assemblies, suspension systems, axles and attaching parts, wheels and rims, and steering systems."

[6] 29 C.F.R. § 1910.132(d) (1994) provided:

(d) Hazard assessment and equipment selection.
　　(1) The employer shall assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE). If such hazards are present, the employer shall:

　　　　(i) Select, and have each affected employee use, the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment;
　　　　(ii) Communicate selection decisions to each affected employee; and,
　　　　(iii) Select PPE that properly fits each affected employee.

NOTE: Non-mandatory Appendix B contains an example of procedures that would comply with the requirement for a hazard assessment.

　　(2) The employer shall verify that the required workplace hazard assessment has been performed through a written certification that identifies the workplace evaluated; the person certifying that the evaluation has been performed; the date(s) of the hazard assessment; and,
(continued...)

whether hazards that required the use of safety equipment were present or likely to be present. Specifically, he pointed to the lack of safety glasses.  While the trial court held that the cited regulation failed on the grounds that it did not apply specifically to the cutting of bands, the Supreme Court of Appeals disagreed.  First, it found that the regulation

> imposes a specific mandatory duty upon employers in the labor industry to assess their workplaces for the purpose of identifying hazards, assessing the need for protective equipment, and, where a need is identified, requiring employees to use the requisite safety equipment.  Because [the regulation] prescribes *specifically identified duties*, as opposed to merely expressing a generalized goal of safety, we conclude that it is not the type of regulation "generally requiring safe workplaces, equipment or working conditions" that is rejected as a foundation for a deliberate intent action[.]

*Ryan,* 219 W. Va. at 671 (emphasis added).  The court then found that the regulation was specifically applicable to the particular work and working condition involved in the plaintiff's case. The regulation was one relating to labor, and it was undisputed that the work done by the plaintiff qualified as labor.  *Id.* at 672.  "Moreover, insofar as [the regulation required], in mandatory terms, that employers 'assess the workplace to determine if hazards are present,' it applies with equal force to the banding operation as it would to any other process that occurred within the employer's workplace."  *Id.*  Accordingly, based on that holding and on other grounds, summary judgment was reversed.

Moreover, as noted above, Section 23-4-2(d)(2)(ii) also imposes the strict requirement that the plaintiff demonstrate deliberate intent.  "[A] plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe

---

[6](...continued)
which identifies the document as a certification of hazard assessment.

12

working condition and the strong probability of serious injury or death presented by such specific unsafe working condition.  This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition.  Instead, it must be shown that the employer actually possessed such knowledge."  *Id.* at Syllabus Point 4.  *See also Marcus v. Holley*, 217 W. Va. 508, 521 (2005) ("the 'deliberate intention' exception to the Workers' Compensation system is meant to deter the malicious employer, not to punish the stupid one."); Syllabus Point 8, *Tolliver v. Kroger Co.*, 201 W. Va. 509 (1997) (the "legislature has plainly indicated the type of allegations which do not sustain a cause of action under [Section 23-4-2(d)(2)(ii)], which specifically provides that a cause of action under its provision may not be satisfied by an allegation of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct.").  In short,"whatever formulation is used [to define deliberate intent] represents a conscious effort to impose severe restrictions on the exception [to employer immunity], bringing it as close to 'subjective desire to injure' as the nuances of language will permit."  *Id.* at 522-23.

## *IV. DISCUSSION*

The Court finds that summary judgment is appropriate in favor of  Defendant on two grounds.

Plaintiff has failed to identify a genuine issue of material fact as to whether the condition of the tires violated a statute, rule, regulation or standard that was specifically applicable to the particular work and working condition involved.  West Virginia Code Section 21-3-1 only imposes a general safety requirement upon employers, with no specific requirements or duties, as in *Ryan*.

13

49 C.F.R. Section 396.7 and West Virginia Code Section 17C-15-1 are similarly general and therefore deficient.  The former only requires that vehicles not be operated in a condition that would be likely to cause an accident or breakdown, and the latter forbids the driving or moving of vehicles that are either in such unsafe conditions so as to endanger others or lack lamps and other equipment in proper condition.  "It is not enough to prove that a part on a piece of machinery was defective and that a statute or regulation required all parts to be in good working order.  Such a statute says very little to the employer."  *Greene*, 663 F. Supp. at 115.

Moreover, the Manual also provides no support for Plaintiff.  While the Manual imposes a specific duty on vehicle inspectors—that, *inter alia*, tires meet certain minimum standards, it imposes no duty on Defendant.  It is undisputed that the truck in this case was inspected and approved, and this was Defendant's only duty under state law.  Despite Plaintiff's assertions, the Manual does not  "[i]mpose a specifically identifiable duty upon [Defendant]."  Syllabus Point 3, *Ryan*.  Unlike the regulation at issue in *Ryan*, the Manual is not a regulation falling under a more general classification that might be applicable to several different industries.  The text of the Manual clearly indicates that it is only applicable to inspection operators.

Finally, the Court finds that Plaintiff has failed to identify a genuine issue of material fact as to whether Defendant, prior to the accident, had <u>actual</u> knowledge of the existence of the balding tires and of the high degree of risk and the strong probability of serious injury or death that they presented.  Plaintiff either called the Atlantic Fleet Service Center in order to get permission to purchase new tires (Docket 26, Ex. 1 at 3) or to indicate that the tires were "bad" and needed to be replaced (Docket 35, Ex. 1 at 3 & 7).  However, neither of these are sufficient to meet the requirements of the statute.  There is no evidence or reasonable inference that Plaintiff described the

tires' condition as an emergency, imminent threat, or other manner such that Defendant's refusal to replace them was malicious and demonstrative of a subjective desire to injure. *See Holley*, 217 W. Va. at 521 and *Tolliver* 201 W. Va. at 523. While Defendant may have declined to replace the tires after Plaintiff indicated that this was needed, evidence of unintended results, negligence, willful, wanton or reckless misconduct are not sufficient to survive summary judgment under this statute. *Tolliver* at Syllabus Point 8. In short, there has simply been no evidence offered to show that the employer had actual knowledge of the high degree of risk and the strong probability of serious injury or death. Having made these findings, the Court finds it unnecessary to address other arguments made by the parties.

### V. CONCLUSION

For the reasons stated above, the Court **ORDERS** Defendant's Motion for Summary Judgment [Docket 26] **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 28, 2010

IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

15